## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | CRIMINAL COMPLAINT |
| v. | CASE NUMBER: MJ-25-04166-001-PCT-CDB |
| DOMINIQUE MEADE, JESSICA RODRIGUEZ, ANTHONY CONDITT, and DIEGO MELCHOR-CRUZ aka Hector Ortega | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about April 29, 2025, in the County of Coconino, in the District of Arizona, the defendants, DOMINIQUE MEADE and JESSICA RODRIGUEZ knowingly, did have in their possession goods and chattels of a value $1,000 or more, that is Nike shoes, which had been stolen from a Burlington Northern Santa Fe train while moving in interstate commerce from California to Arizona, knowing the goods and chattels to be stolen, in violation of Title 18, United States Code, Section 659.

### COUNT 2

On or about April 29, 2025, in the County of Coconino, in the District of Arizona, the defendants, ANTHONY CONDITT and DIEGO MELCHOR-CRUZ aka Hector Ortega knowingly, did have in their possession goods and chattels of a value $1,000 or more, that is Nike shoes, which had been stolen from a Burlington Northern Santa Fe train while moving in interstate commerce from California to Arizona, knowing the goods and chattels to be stolen, in violation of Title 18, United States Code, Section 659.

I further state that I am a Special Agent for Homeland Security Investigations (HSI) and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof: ☒Yes ☐ No

AUTHORIZED BY: AUSAs Ryan McCarthy and Maria Gutierrez

*Ryan McCarthy*
Digitally signed by RYAN
MCCARTHY
Date: 2025.05.01
11:34:56 -07'00'

Brynna Cooke, SA for HSI                          *Brynna Cooke*
Name of Complainant                               Signature of Complainant

Sworn to telephonically before me
 May 1, 2025                                at    Flagstaff, Arizona
Date                                              City and State

HONORABLE CAMILLE D. BIBLES                       Camille D.    Digitally signed by Camille
                                                                D. Bibles
United States Magistrate Judge                    Bibles        Date: 2025.05.01 12:08:51
                                                                -07'00'
Name & Title of Judicial Officer                  Signature of Judicial Officer

## STATEMENT OF PROBABLE CAUSE

I, Brynna Cooke, a Special Agent for Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I am a Special Agent with HSI and have been so employed since April 2024. Prior to my employment with HSI, I served as a United States Customs and Border Protection Officer for approximately four years. I am a law enforcement officer of the United States, and I am empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.

2.    As a Special Agent with HSI, your Affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, and money laundering violations. Your Affiant is familiar with investigations involving stolen vehicle organizations, theft rings, possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.   As an HSI Special Agent, your Affiant has been trained in conducting narcotics and money laundering investigations and received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the United States Code.   I am currently assigned to the HSI Flagstaff Office located in Flagstaff, Arizona, where we investigate transnational criminal organizations to include money laundering and drug trafficking organizations operating throughout the United States.

3.    By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

      a.    functioning as a surveillance agent, thus observing and recording movements of persons involved in violations of United States Code as well as violations of Arizona State law;

b.     functioning as a case agent, entailing the supervision of specific investigations involving various crimes throughout the United States; and

c.     conducting complex investigations involving transnational criminal organizations committing various crimes throughout the United States.

4.     I have consulted with other experienced investigators concerning the practices of transnational criminal organizations and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

5.     Based on the below facts, your Affiant submits there is probable cause that DOMINIQUE MEADE, JESSICA RODRIGUEZ, ANTHONY CONDITT, and DIEGO MELCHOR-CRUZ aka Hector Ortega committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659.

## BACKGROUND

6.     Over the past 15 years, several Criminal Theft Organizations have been burglarizing Burlington Northern Santa Fe (BNSF) Railway as well as Union Pacific trains throughout the Southwest of the United States including Arizona. These organizations consist primarily of Mexican citizens from the Mexican State of Sinaloa who operate out of Arizona and California, with extensive connections throughout California, Arizona, and New Mexico. The train burglaries have increased in frequency over the past two years.

7.     Scouts usually target high value containers on the BNSF railway on Eastbound trains that parallel Interstate 40 near Needles, California. Once the organization targets a particular train of interest, they typically find a location for several train burglars to get on the train. Once on the train, the burglars open container doors while the train is moving and target merchandise to steal such as electronics, tools and wearing apparel. The burglars often target containers with visible high-security locks and use reciprocating saws,

bolt-cutters, or similar tools to defeat the locking mechanisms.   Once the burglars target a specific container that has desirable merchandise, the burglars often cut train braking system air hose, which causes the train to go into an emergency stop (commonly referred to as "UDE"), which is a sudden and dramatic application of all the brakes on the train. By cutting an air hose, the burglars' control when and where the train is stopped in order to unload the cargo they target to burglarize. This act is very dangerous and can cause a train to derail, which could ultimately cause serious injury or death to BNSF employees or citizens. The burglars have also sabotaged the train signal system by cutting the locks off signal boxes and then by cutting the control wires inside. This is also a dangerous act that creates dark areas on the rail network, requiring non-traditional train dispatching functions and extensive repairs. High-value trains travel at speeds up to 70 MPH on multiple tracks in both east and west direction. The train crews and train dispatchers rely on the signals for safe transportation.

8.      The burglars on the train communicate with follow vehicles utilizing cellular devices, and those follow vehicles surveil the train until it stops, either at a natural stopping point or when the burglars cause the stop, to unload the freight. Once the burglars unload the merchandise from the container that is on the train, the burglars often hide the product in fields or brush adjacent to the BNSF tracks to conceal it until it can be picked up at a later time. The location of the stolen merchandise is then shared by the train burglars with the use of cellular telephones to the surveillance crew who are following the train. A U-Haul, box truck, cargo panel van, or pickup trucks are used to pick up the stolen merchandise if law enforcement is not detected. Once the stolen merchandise has been picked up, it is usually transported to California where it is sold or fenced to wholesale online retailers such as third-party Amazon and eBay resellers.

## CURRENT INVESTIGATION

9.      On April 29, 2025, on the BNSF railroad tracks north of Ash Fork, Arizona, a BNSF train passed by eastbound BNSF train QLACLPC629 which was stopped on the railroad tracks.   BNSF train QLACLPC629 was stopped from 5:17 p.m. until 6:54 p.m. due to railroad traffic.   The passing BNSF train observed several individuals onboard

BNSF train QLACLPC629 and loading boxes into an awaiting vehicle.   Additionally, the BNSF employees observed three vehicles on the south side of the BNSF railroad tracks, including a white Honda Accord, a white Jeep Liberty, and a blue Astro van.   BNSF personnel onboard the train called their dispatch who relayed the information to Coconino County Sheriff's Office (CCSO) Deputies.

      a.  *MEADE and RODRIGUEZ*

10.    At approximately 7:35 p.m., CCSO responded to the Kaibab Estates West near BNSF railroad mile post 407.   CCSO Deputy Brown positioned his patrol vehicle at Drake Stone Products and observed a white Chevrolet cargo van traveling southbound on West Canyon Road near Ash Fork, Arizona.   Deputy Brown observed the cargo van was occupied by two individuals.   In plain view, Deputy Brown observed through the rear windows boxes stacked to the roof of with the size and shape consistent with Nike shoe boxes.   Additionally, Deputy Brown observed that the rear license plate lamp was not operating or illuminating the license plate.

11.    Deputy Brown conducted a traffic stop of the cargo van.   He observed the cargo van was bearing Nevada plate 97E679.   After approaching the driver's side door, Deputy Brown confirmed there were two occupants inside the cargo van.   The driver identified himself as DOMINIQUE MEADE.   He was not in possession of a driver's license.   The passenger was later identified as JESSICA RODRIGUEZ.   Deputy Brown observed RODRIGUEZ appeared to have a stiff posture, avoided eye contact, and stared into the distance.

12.    Deputy Brown conducted a roadside interview with MEADE.   MEADE stated he was not familiar with Arizona State Laws because he was from California. He said he was not in possession of the vehicle's registration or proof of insurance since he was borrowing it from a friend.   When Deputy Brown asked about the shoe boxes in the rear cargo area, MEADE replied that his friend "Buffy," allowed him to take the shoes and deliver them. The location of delivery location was not disclosed. MEADE told Deputy Brown that the shoes were from the "shop, the shoe store" in California.   When asked

about his travels and end destination, MEADE could not recall. He requested to speak with the female in the passenger for clarification and to not make him "look stupid."   Deputy Brown asked MEADE to clarify his travels to the best of his recollection without talking to the female. MEADE stated that the female passenger was his girlfriend.

13.    MEADE told Deputy Brown of opening a shoe store named "Drip," and a friend asked him to take the shoes in the van.   MEADE said he departed from California in the early morning, "making a stop" at his aunt's to retrieve the shoes, before continuing to Bullhead City, Arizona.   MEADE said all boxes in the rear cargo area contained shoes but did not know the type or style. When questioned about his business, MEADE said it was a clothing store and then corrected himself stating his business consisted of both shoes and clothing.   During the interview, Deputy Brown noticed MEADE was speaking quickly, shaking, and appearing to be apprehensive with his responses when questioned. Deputy Brown observed his clothing, and hands were dirty and dusty. When questioned about the dirt on clothing and hands, MEADE responded that he was a mechanic. Additionally, MEADE asked to smoke a cigarette that was located inside center console/dash of the cargo van.   When attempting to locate the items, Deputy Brown observed a clear glass pipe which he recognized based on his training and experience as drug paraphernalia.

14.    MEADE provided consent to search the cargo van.   Deputy Brown observed boxes marked as, "AIR JORDAN 5 RETRO OG SP" with a style number of IB1528-100. Deputy Brown opened one of the shoe boxes and observed a pair of Jordan Nike shoes.

15.    Deputy Brown conducted an interview with RODRIGUEZ.   She stated that she departed California a couple of days ago for Utah to visit family and was provided with a ride by MEADE.   RODRIGUEZ told Deputy Brown that there was methamphetamine in a small plastic bag and a pipe within the vehicle. She denied the drug and pipe found in the center console/dash belonged to her. RODRIGUEZ told Deputy Brown that she used methamphetamine earlier in the day.   When questioned about the packages and shoe boxes in the back storage area of the van, RODRIGUEZ said she did

not realize they were in the vehicle.   Additionally, RODRIGUEZ denied she was in a relationship with MEADE and had only just met him.

16.    MEADE and RODRIGUEZ were arrested and placed in custody.   Deputy Brown searched the cargo van and located the glass pipe with white powder residue within and burnt at the bottom of the pipe in the cupholder closest to the passenger side. Deputy Brown observed a clear plastic bag with a white powdery substance believed to be methamphetamine in the cup holder closest to the driver seat. Near the center console, Deputy Brown observed a makeshift bong utilized to smoke marijuana.

17.    RODRIGUEZ reported to law enforcement as having a heart murmur and officers called for medical assistance.   RODRIGUEZ told the responding medical personnel from Lifeline Medical Team that she had suicidal ideations.   RODRIGUEZ was cleared of any medical issues by Lifeline Medical Team.   RODRIGUEZ was transported to CCSO County Jail.

### b. CONDITT and MELCHOR-CRUZ

18.    At approximately 10:30 p.m., BNSF Special Agent (SA) Hughes went to the burglary site where the BNSF train reported seeing the vehicles.   At the location, SA Hughes observed approximately 50 empty cardboard Nike master cases with the contents emptied out approximately 30 feet from the railroad tracks.   The master cases were marked with style number IB1528-100.

19.    At approximately 9:14 p.m., CCSO Detective Peery observed a white box truck approximately one mile from the railroad tracks near Forest Service Road 124 traveling eastbound.   I know that eastbound on Forest Service Road 124 leads to Country Club Road and to Interstate 40.    Additionally, Forest Service Road 124 connects to the burglary site through Forest Service roads. Investigators maintained continuous surveillance of the County Club Road during the evening and did not observe the white box truck traveling south toward the freeway.

20.    On April 30, 2025, at approximately 5:22 a.m., Flagstaff Police Department (FPD) Sergeant Leyva observed a white box truck traveling southbound on Country Club

Road heading towards a small, one lane tunnel which leads to Interstate 40. Law enforcement attempted to stop the box truck in the tunnel with marked police vehicles with their emergency lights on. Once inside the tunnel, the box truck accelerated backwards and hit two CCSO marked vehicles causing damage to the vehicles. As the vehicle reserved out of the tunnel and onto Country Club Road, HSI Task Force Officer Lesperance observed the vehicle was occupied by two individuals. The driver was observed as a male with black hair and wearing a red shirt and the passenger was observed as a female wearing a light-colored shirt and holding a purse.

21. The box truck failed to yield and CCSO marked vehicles pursued the box truck with lights and sirens as it drove north at a high rate of speed on Country Club Road then to Forest Service Road 124. Deputies discovered the box truck abandoned at Forest Service Road 160, approximately four miles from the initial stop in the tunnel. The box truck displayed California license plate 27337Y3 and the passenger side door was opened. Additionally, there was damage to the passenger side door visible. Law enforcement conducted a safety sweep of the box truck and in the rear cargo compartment, officers observed numerous cardboard boxes with size, shape, and markings consistent with Nike master cases. The boxes were marked with the style number IB1528-100.

22. At approximately 6:35 a.m., law enforcement arrested the passenger of the box truck who identified themself as ANTHONY CONDITT. CONDITT was observed walking out of the wooded area approximately 25 yards from the box truck towards the direction of the box truck. CONDITT was wearing a light-colored shirt and in possession of a small purse. Once observed by law enforcement, CONDITT followed law enforcement commands and was taken into custody. A CCSO Deputy read CONDITT his *Miranda* rights. CONDITT stated to agents that the driver of the box truck's name is "Hector Ortega," later identified as MELCHOR-CRUZ. CONDITT said that "Ortega" had picked up CONDITT in Laughlin, Nevada at approximately 1:00 a.m. on April 29, 2025. CONDITT believed "Ortega," was driving them to Victorville and CONDITT did not know how they got into the forest. CONDITT stated both "Ortega" and himself were

in the vehicle at the time it hit the CCSO marked vehicles and he did not know what was inside the vehicle. A photo of MELCHOR-CRUZ was shown to CONDITT who stated that was not the person he knows as "Ortega."

23. CONDITT was transported to Flagstaff Medical Center for medical attention. At approximately 5:52 p.m., CONDITT was released from the hospital and transported to FPD for an interview. Agents asked if CONDITT goes by any other names to which he responded "Buffy." HSI Agents read CONDITT his *Miranda* rights to which he invoked.

24. At approximately 6:55 a.m., Deputy Waibel with his canine, Dex, trained to detect human scent and last certified in the discipline of scent tracking in July 2024, was deployed at the site of the abandoned box truck to attempt to locate MELCHOR-CRUZ. At approximately 10:11 a.m., CCSO Deputy Waibel and Dex discovered a red wallet and a black hat/wig in the brush approximately 500 feet from the box truck. The wallet contained the names of multiple people and no photo identification.

25. At approximately 10:39 a.m., a Coconino County Public Works employee was driving on Forest Service Road 124 and observed a male later identified as MELCHOR-CRUZ wearing a red colored shirt walking in the woods approximately 50 yards from the main road. Williams Police Department responded and detained MELCHOR-CRUZ. A photo was taken of the bottom of the male's shoes. The bottom has a circle with concentric circles around it and a triangle through the circle. The heel of the sole has a latter pattern with a tear drop in the center. I reviewed photos taken from the driver's side door of the abandoned box truck of shoe prints in the dirt. The shoe prints had similar markings to the male individual's shoe with concentric circles near the ball of the foot and a ladder pattern near the heel. Additionally, MELCHOR-CRUZ was observed wearing a red jacket with reflective markings on the arms and across the chest.

26. I reviewed photos from CCSO dash camera footage from the attempted traffic stop of the box truck. A photo of the footage showed the driver of the box truck

was wearing a red long sleeve shirt with a reflective marking on the arm in the same location as MELCHOR-CRUZ.

27.    MELCHOR-CRUZ was transported to FPD for a formal interview.  HSI Agents read the subject his *Miranda* rights to which he acknowledged and waived.    He identified himself as DIEGO MELCHOR-CRUZ and a citizen and national of Mexico. Initially, MELCHOR stated to agents that he traveled from Los Angeles, California to Bullhead City, Arizona with a person named Veronica Martinez in a gray Mazda belonging to Martinez.    MELCHOR-CRUZ said they decided to go camping near Flagstaff, Arizona. When he was encountered, MELCHOR-CRUZ stated that he had just left his campsite to go get fuel.  MELCHOR-CRUZ then told Agents that he actually came from Bullhead City, Arizona in a gray Mercedes with three other friends.  The friends drove him to Williams, Arizona and left him in the woods.   MELCHOR-CRUZ then met an unknown person who was in a box truck.

28.    When asked about the attempted traffic stop and flight from law enforcement, MELCHOR-CRUZ stated he was driving the box truck and stopped when law enforcement initially pulled them over in the tunnel.  MELCHOR-CRUZ said that after he stopped, the unknown passenger switched places with him, and the unknown passenger drove the box truck into the law enforcement vehicle and fled.   Agents showed MELCHOR-CRUZ a photo of CONDITT who stated that CONDITT was the other individual from the box truck.   Agents showed MELCHOR-CRUZ a photo of him driving the box truck after the box truck hit the CCSO marked vehicles and he stated again that he was only the passenger during the traffic stop and swapped with the driver after the stop. MELCHOR-CRUZ stated he has two phones, one an iPhone 6 and the other a Cricket phone that he uses only for WhatsApp.

29.    I reviewed photos taken of the cargo compartment of the cargo van and believe there are approximately 180 total pairs of Nike shoes, in both the Nike master cases and loose boxes.    Additionally, I reviewed photos of the rear cargo compartment of the box truck and believe there are approximately 100 Nike master cases or approximately 600

Nike shoes.   Based on my training and experience as well as familiarity with this investigation, I know that master cases are utilized to ship Nike products and not available to the public.   Additionally, I know that master cases contain usually six to twelve pairs of shoes in their retail boxes per master case. The markings on the outside of the master case indicate the shoe style, size, and quantity per box.

30.    Open-source research shows that style IB1528-100 are unreleased and will not be available to the public until May 14, 2025.   Each pair has a manufacturer's suggested retail price of $225.   With approximately 180 shoe boxes, the approximate value of shoes stolen in the cargo van is $40,500.   With approximately 100 Nike master cases, for a total of approximately 600 pairs of shoes, the approximate value of the shoes stolen in the box truck is $135,000.

31.    I learned from BNSF Special Agent Porter that the Nike shoes discovered in the cargo van, the box truck, and the empty cardboard boxes at the burglary site were all stolen from container ECMU4880920 which was a container aboard BNSF train QLACLPC629.   BNSF train QLACLPC629 was stopped in Winslow in the BNSF railyard for inspection.   BNSF employees observed container ECMU4880920 doors were open and the product inside the container was removed.   There were approximately nine Nike master cases on the ground with boxes of shoes opened.   The shoes inside the container matched the same style number and color as those found in the cargo van and the box truck.

32.    I conducted Department of Homeland Security import research related to container ECMU4880920 and learned that on April 1, 2025, container ECMU4880920 was shipped on Motor Vessel EVER MAST TEKG, which departed from Yantian, China, and arrived at the Los Angeles, California, Seaport on April 15, 2025. After its arrival, container ECMU4880920 was transferred to BNSF for transportation along the Transcontinental railroad. On April 28, 2025, the container was loaded onto the train which traveled from California into Arizona where the theft occurred.

## **CONCLUSION**

33.     For these reasons, your Affiant submits that there is probable cause to believe that DOMINIQUE MEADE, JESSICA RODRIGUEZ, ANTHONY CONDITT, and DIEGO MELCHOR-CRUZ aka Hector Ortega committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659.

34.     I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.


*Brynna Cooke*
BRYNNA COOKE
Special Agent
Homeland Security Investigations


Sworn telephonically and subscribed electronically this __1st__ day of May 2025.

Camille D.
Bibles
Digitally signed by Camille D.
Bibles
Date: 2025.05.01 12:08:25
-07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge